# United States Court of Appeals for the Federal Circuit

04-1209, -1210

EURODIF S.A.,
COMPAGNIE GENERALE DES MATIERES NUCLEAIRES,
and COGEMA, INC.,

Plaintiffs-Appellants,

and

AD HOC UTILITIES GROUP,

Plaintiff-Appellant,

v.

UNITED STATES

Defendant-Cross Appellant,

and

USEC INC. and UNITED STATES ENRICHMENT CORPORATION,

Defendants-Cross Appellants.

Stuart M. Rosen, Weil, Gotshal & Manges LLP, of New York, New York, argued for plaintiffs-appellants Eurodif S.A., et al. With him on the brief were Gregory Husisian, of Washington, DC, and Jennifer J. Rhodes, of New York, New York.

Nancy A. Fischer, Shaw Pittman LLP, of Washington, DC, argued for plaintiff-appellant AD HOC Utilities Group. With her on the brief were Stephan E. Becker, Sanjay J. Mullick, and Joshua D. Fitzhugh.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant United States. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director. Of counsel on the brief were John D. McInerney, Chief Counsel, Berniece A. Browne, Senior Counsel, and Robert L. Lafrankie, Senior Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Sheldon E. Hochberg, Steptoe & Johnson LLP, of Washington, DC, argued for defendants-cross appellants USEC Inc., et al.  With him on the brief were Richard O. Cunningham, Eric C. Emerson, Matthew S. Yeo, Evangeline D. Keenan, and Alexandra E.P. Baj.

Bradford L. Ward, Dewey Ballantine LLP, of Washington, DC, for amicus curiae Committee to Support United States Trade Laws.  With him on the brief was David Hartquist, Collier Shannon Scott, PLLC, of Washington, DC.

Appealed from:  United States Court of International Trade

Judge Donald Pogue

# United States Court of Appeals for the Federal Circuit

04-1209, -1210

EURODIF S.A.,
COMPAGNIE GENERALE DES MATIERES NUCLEAIRES,
and COGEMA, INC.,

Plaintiffs-Appellants,

and

AD HOC UTILITIES GROUP,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Cross Appellant,

and

USEC INC. and UNITED STATES ENRICHMENT CORPORATION,

Defendant-Cross Appellants.

ON PETITION FOR REHEARING

Before BRYSON, Circuit Judge, PLAGER, Senior Circuit Judge, and PROST, Circuit Judges.

PROST, Circuit Judge.

ORDER

More than three months after we decided this case, the Supreme Court issued its opinion in National Cable & Telecommunications Ass'n v. Brand X Internet Services, 125 S. Ct. 2688 (Jun. 27, 2005). In letters disclosing National Cable as a supplemental

authority pursuant to Federal Circuit Rule 28(j), the United States, USEC, Inc. and the United States Enrichment Corporation (collectively, "Petitioners") contend that the Supreme Court's reasoning in National Cable strongly supports arguments presented in their petitions for rehearing. We grant the petitions for rehearing by the panel for the limited purpose of addressing the applicability of National Cable to this case. In all other respects, we reaffirm our earlier opinion and judgment. See Eurodif S.A. v. United States, 411 F.3d 1355 (Fed. Cir. 2005).

I

In National Cable the Supreme Court heard an appeal from the Ninth Circuit in a case involving the proper regulatory classification of broadband cable Internet service under the Communications Act of 1934, 48 Stat. 1064, as amended by the Telecommunications Act of 1996, 110 Stat. 56. See 125 S. Ct. at 2696. The Ninth Circuit had vacated a ruling by the Federal Communications Commission ("FCC") to the extent the FCC's ruling concluded that cable modem service was not "telecommunications service" under the Communications Act. Id. at 2698. "Rather than analyzing the permissibility of that construction under the deferential framework of Chevron, . . . the Court of Appeals grounded its holding in the stare decisis effect of AT&T Corp. v. Portland . . . ." Id. (citations omitted).

The Supreme Court reversed and remanded. It held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." Id. at 2700. It similarly stated that "[b]efore a judicial construction of a statute, whether

contained in a precedent or not, may trump an agency's, the court must hold that the statute unambiguously requires the court's construction." Id. at 2702.

The Supreme Court explained that Chevron set forth a two-step process to evaluate whether an agency's interpretation of a statute is lawful. At step one we determine "whether the statute's plain terms 'directly addres[s] the precise question at issue.'" Id. (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)). If we determine that the statute is ambiguous on the precise question at issue, "we defer at step two to the agency's interpretation so long as the construction is 'a reasonable policy choice for the agency to make.'" Id. (quoting Chevron, 467 U.S. at 845). On the other hand, if we determine that the statute is unambiguous on the precise question at issue, we do not defer to the agency's interpretation, regardless of whether that interpretation is grounded in a reasonable policy choice. See id.

II

Petitioners argue that the holding of National Cable strongly supports their contention that we erroneously relied upon Florida Power & Light v. United States, 307 F.3d 1364 (Fed. Cir. 2002), to conclude that the Department of Commerce's ("Commerce's") finding, that the separative work units ("SWU") contracts at issue in this case were contracts for the sale of goods and therefore subject to the antidumping duty statute, is not in accordance with law. In particular, the United States argues that we have not held, either in Florida Power or here, "that the antidumping 'statute unambiguously requires' that the term 'sold' excludes the acquisition of imported merchandise in exchange for raw materials and cash." Similarly, USEC, Inc. and the United States Enrichment Corporation (collectively, "USEC") contend that we

"erroneously relied upon the earlier determination of this Court in <u>Florida Power & Light Co. v. United States</u> so as to fail to give appropriate deference to the Commerce Department's conclusion that the import transactions [here] involved a sale of merchandise under the antidumping law."

### III

As a preliminary matter, Petitioners are incorrect to the extent they imply that we found ourselves bound by <u>Florida Power</u> in this case under the doctrine of <u>stare</u> <u>decisis</u>. To the contrary, we specifically stated that "<u>Florida Power</u> is not binding precedent for this case" but that it is "persuasive" authority. <u>Eurodif</u>, 411 F.3d at 1363; <u>cf.</u> <u>National Cable</u>, 125 S. Ct. at 2701 (noting that the Ninth Circuit held that a prior judicial construction of a statute categorically controls an agency's contrary construction).[1]

On the other hand, Petitioners are correct to the extent they point out that in <u>Florida Power</u> we did not expressly hold that the antidumping duty statute "unambiguously" applies to contracts for the sale of goods only and "unambiguously" does not apply to the contracts at issue in this case in particular. And although in our opinion in this case we did expressly hold that the countervailing duty statute unambiguously does not allow for the purchase of services to be considered a subsidy, <u>Eurodif</u>, 411 F.3d at 1365, as in <u>Florida Power</u> we did not expressly state that the antidumping duty statute unambiguously applies to contracts for the sale of goods only and unambiguously does not apply to the contracts at issue in this case in particular.

---

[1]    In this regard, we rejected the argument that we should ignore the analysis and reasoning of <u>Florida Power</u> because that case involved a different statutory scheme. We chose not to ignore <u>Florida Power</u>, but instead to recognize its persuasive power, because the nearly identical circumstances in that case were those surrounding SWU contracts. <u>See</u> <u>Eurodif</u>, 411 F.3d at 1363.

We now clarify by stating expressly that the antidumping duty statute unambiguously applies to the sale of goods and not services. In our opinion, we stated that "[u]nder the statutory scheme adopted by Congress, the sale of goods (or 'merchandise') is covered by the antidumping duty statute" but that the "provision of services, however, is not . . . ." Eurodif, 411 F.3d at 1361. While we did not use the term "unambiguous," we clearly foreclosed any argument that § 1673 is ambiguous on the precise question of whether the antidumping duty statute encompasses contracts for services. It undoubtedly does not.

Commerce's characterization of the SWU contracts at issue in this case would contradict, we conclude, the statute's unambiguous meaning because it is clear that those contracts are contracts for services and not goods. While Petitioners concede that a sale of goods requires a transfer of ownership, see United States' Petition for Rehearing at 9 (citing NSK Ltd. v. United States, 115 F.3d 965 (Fed. Cir. 1997)) and USEC's Petition for Rehearing at 2 (same), they do not recognize the critical importance of the indisputable fact that, pursuant to the contracts at issue in this case, enrichers never obtain ownership of either the feed (unenriched) uranium during enrichment or the final low enriched uranium ("LEU") product. Nevertheless, the inescapable conclusion flowing from this circumstance is that the enrichers do not "sell" LEU to utilities pursuant to the SWU contracts at issue in this case.

As we stated in our opinion:

> In reviewing the contracts in this case, it is clear that ownership of either the unenriched uranium or the LEU is not meant to be vested in the enricher during the relevant time periods that the uranium is being enriched. While it is correct that a utility may not receive the LEU that was enriched from the exact unenriched uranium that it delivered to the enricher, it is nevertheless true that up until the sampling and weighing of

the LEU before delivery, the utility retains title to the quantity of unenriched uranium that is supplie[d] to the enricher. The utility's title to that uranium is only extinguished upon the receipt of title in the LEU for which it contracted. Therefore, the SWU contracts in this case do not evidence any intention by the parties to vest the enrichers with ownership rights in the delivered unenriched uranium or the finished LEU. As a result, the "transfer of ownership" required for a sale [of goods] is not present here.

Eurodif, 411 F.3d at 1362. We adhere to that analysis today, noting that the complete absence of a transfer of ownership over LEU requires that we reject Commerce's application of the antidumping duty statute to the SWU contracts.

IV

This Order constitutes the panel's action in response to the petitions for rehearing. We conclude that our analysis in this case is consistent with the Supreme Court's holding in National Cable, and we reaffirm our decision that Commerce's finding that the SWU contracts were contracts for the sale of goods and therefore subject to the antidumping duty statute was not in accordance with law.

FOR THE COURT

_____9-9-05_____          s/Sharon Prost___
      Date          Sharon Prost
                         Circuit Judge