**Slip Op. 06-75**

**United States Court of International Trade**

---

EURODIF S.A., COMPAGNIE GÉNÉRALE
DES MATIÈRES NUCLÉAIRES AND
COGEMA,
INC., ET.AL.,

               Plaintiffs,

          v.

UNITED STATES,

               Defendant.

Before: Pogue, Wallach, and
       Eaton, Judges
Consol. Court No. 02-00219

---

[Plaintiffs' motion for remand granted; Defendant-Intervenor's
motion denied.]

Decided: May 18, 2006

**Per Curiam:** This matter arises after remand pursuant to
Eurodif S.A. v. United States, 411 F.3d 1355 (Fed. Cir. 2005)
("Eurodif I") and Eurodif S.A. v. United States, 423 F.3d 1275
(Fed. Cir. 2005) ("Eurodif II"). In accordance with these
decisions, we ordered "that Commerce upon remand shall revise such
final determination and order in accordance with the decisions in
Eurodif I and II. Commerce shall specifically explain how its
final determination and order on remand has eliminated all SWU
transactions as required by Eurodif I and II." Eurodif S.A. v.
United States, 414 F. Supp. 2d 1263, 1263, 30 CIT ___,___(2006)
(emphasis added) ("Eurodif III").

In totality, Commerce in its Final Results of Redetermination Pursuant to Court Remand, recalculated the duty margin by excluding all low enriched uranium ("LEU") covered by separative work unit ("SWU") contracts from its margin calculation. See Low Enriched Uranium from France: Final Results of Redetermination Pursuant to Court Remand, Consol. Ct. No. 02-00219, Slip Op. 06-02 (January 5, 2006 CIT) at 3 ("Remand Redetermination"). Despite the contrary holdings of Eurodif I and II and the specific instructions of this court, however, Commerce concluded that it will not modify the scope of the antidumping duty order to exclude LEU covered by SWU contracts. Id. at 4-5.

Responding to Commerce's conclusion, Eurodif S.A., Cogema, and Cogema, Inc. (collectively "Eurodif") claim that Commerce erred in its Remand Redetermination. Eurodif claims that any LEU covered by SWU contracts should be excluded from the scope of the antidumping duty order. As such, Eurodif asks the court to direct Commerce to amend to:

> (1) Liquidate all entries without antidumping duties on LEU imported to fulfill SWU contracts (and therefore refund cash deposits already tendered on such entries);
> (2) exclude LEU imported to fulfill SWU contracts from the scope of the order;
> (3) cease the suspension of liquidation and any deposit requirement on such entries.

Eurodif's Comments re: Commerce's Final Results of Redetermination Pursuant to Ct. Remand at 13.

Alternatively, Defendant-Intervenors, USEC Inc. and United States Enrichment Corporation (collectively "USEC"), argue that Commerce excluded too many goods from the margin calculation through its failure to investigate the facts behind the SWU contracts. See Resp. USEC Inc. & U.S. Enrichment Corp. Final Results of Redetermination Pursuant to Ct. Remand at 3-8 ("USEC's Resp."). Specifically, USEC argues that although the SWU contracts may facially suggest that they cover the provision of services, in fact, in some instances, the title over the uranium used in the process transfers during the transaction, making that transaction a sale of goods. By failing to undertake this investigation, USEC avers, Commerce impermissibly excluded non-service oriented transactions. Id. at 4-6. Additionally, USEC argues that Commerce failed to consider whether Cogema and suppliers of uranium ores were affiliated and, thereby, improperly excluded certain LEU covered by SWU contracts from the dumping margin. Id. at 6-8.

We will address each issue.[1]

**(1) Failure to re-open the record to investigate the facts behind SWU transactions:**

---

[1]USEC raised methodological issues in its Compliant for which this court reserved judgment. In its papers filed in conjunction with Commerce's Remand Redetermination, USEC has advised the court that it waives these arguments. USEC Resp. at 8. Similarly, Eurodif amended its complaint to withdraw any issues for which this court has reserved judgment. Eurodif's Amendment of Compl. by Consent, April 27, 2007.

USEC claims that although the contracts in question might be read as service contracts, in some instances, the transactions may really entail the sale of goods under the test enunciated in Eurodif I and II.  See id. at 4-6.  USEC argues that some transactions involve the enricher's client providing certain feed uranium and receiving from the enricher LEU not made from the uranium the client supplied.  Id.[2]  Under such an arrangement, USEC asserts, title over the feed uranium supplied by the client must transfer to the enrichers, and title over the enricher's uranium (which the client receives back) must revert to the client.  Therefore, USEC claims, such arrangements would constitute a sale of goods under the Federal Circuit's Eurodif I and II.

In its Remand Redetermination, Commerce found that our remand instructions did "not allow for a transaction-by-transaction

---

[2]For example, under USEC's theory, if a person took his or her Hummer® to the carwash and received a different(albeit clean) Hummer®  back such a transaction would involve the sale of goods, i.e., a new Hummer®.  The Hummer® the client initially provides would merely constitute part of the consideration for the new Hummer®.  To address such factual circumstances, USEC proposes a test for  differentiating those transactions involving the provision of services from those providing the sale of goods.  It appears that under this test, presumptively SWU contracts will be treated as contracts for the provision of services.  This presumption however, could be overcome in instances where (1) "contracts which provide for utilities to deliver natural uranium in less time than necessary to cover the average production and delivery time for LEU imply transactions in which the enricher owns the LEU during the enrichment process" or (2) "the short natural uranium delivery lead time in such contract implies that the enricher effectively conveyed ownership of natural uranium used in the enrichment to the utility when production began." USEC Comments at 4.

analysis of each SWU contract or of the broader context of each sale made under these contracts." Remand Redetermination at 3. Rather, Commerce concluded that our order required the exclusion of all LEU covered by SWU contracts regardless of any other factors parties raised regarding the enriching transactions covered by SWU contracts. Therefore, Commerce declined to reopen the record in order to investigate USEC's allegations. Id.

We agree with Commerce. The Federal Circuit held in Eurodif II that the "inescapable conclusion flowing from [the circumstances present] is that the enrichers do not 'sell' LEU to utilities pursuant to the SWU contracts at issue here." Eurodif II, 423 F.3d at 1278. In so holding, Eurodif II reaffirmed Eurodif I's holding that under "the contracts in this case, it is clear that ownership of either the unenriched uranium or the LEU is not meant to be vested in the enricher during the relevant time periods that the uranium is being enriched." Id. (quoting Eurodif I, 411 F.3d at 1362). Both Eurodif I and II found that this conclusion was not altered by factual circumstances operating behind the individual contracts at issue here. Significantly, in specifically rejecting the argument USEC raises here, Eurodif II held that "[w]hile it is correct that a utility may not receive the LEU that was enriched from the exact unenriched uranium that it delivered to the enricher, it is nevertheless true that up until the sampling and weighing of the LEU before delivery, the utility retains title to

the quantity of unenriched uranium that is supplie[d] to the enricher." Id. (quoting Eurodif I, 411 F.3d at 1362).

Accordingly, the Federal Circuit has already considered this issue and held that the facts/arguments USEC raises in this respect are of no moment. Thus, Commerce's Remand Redetermination on this issue is sustained.

**(2) Affiliated Party Feed Purchase Claim**

Next, USEC contends that "Commerce's approach failed to examine whether a given SWU transaction in which the natural uranium was supplied by Cogema – a respondent in this case – or an affiliate thereof should be treated as a sale of merchandise." USEC's Resp. at 6. Commerce did not squarely address this issue apparently finding that the remand instructions did not direct it reopen the record on this question.

Commerce is correct. Nothing in this court's remand order pertained to this question. In our original decision USEC Inc. v. United States, 27 CIT ___,___, 259 F. Supp. 2d 1310, 1316 n.4 (2003), we specifically noted that the record did not indicate that such an affiliation was relevant to Commerce's decision. Commerce chose not to pursue this analysis. See Final Remand Determination for USEC Inc. And United States Enrichment Corporation v. United States, Court Nos. 02-00112, 02-00113, 02-00114, and Consol. Court Nos. 02-00219, 02-0000221, 02-00227, 02-00229, and 02-00233 Slip. Op. 03-34, (March 25, 2003) at 60. As such, Commerce's Remand

Determination now before the court is sustained on this issue.


**(3) Scope of the Order**

Last, Eurodif argues that we should remand with instructions for Commerce to modify the scope of the antidumping order to exclude LEU covered by SWU contracts.    Commerce and USEC concede, as they must, that when the court finds that the scope of an order improperly extends to certain goods, Commerce must ordinarily revise the antidumping duty order to exclude such goods. Nevertheless, both argue that the order's scope is proper here. Directing the court to 19 U.S.C. § 1677(25), Commerce argues that "'subject merchandise' means the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, [or] an order under this subtitle . . . ." Because all LEU imported is of the "class or kind of merchandise . . . within the scope of an . . . order," Commerce claims, all LEU must fall within the order. Commerce admits that certain LEU may be excluded from antidumping duties by virtue of the Federal Circuit's holdings in <u>Eurodif I</u> and <u>II</u>. Nonetheless, Commerce claims that those goods are only excludable on the basis of the non-physical features, <u>i.e.</u>, that they are covered under SWU contracts.    <u>See</u>, <u>e.g.</u>, Def.'s Resp. Parties Remand Cmts. 6-7; <u>cf.</u> Remand Redetermination

at 5.[3]  Non-physical features, Commerce contends, are not a basis
for distinguishing goods from the "class or kind of merchandise"
subject to the antidumping duty order.   Consequently, Commerce
concludes that the adjustments Eurodif I and II require may only be
made in an administrative review rather than through modifying the
antidumping duty order.

The first flaw with Commerce's argument is that it is circular
– LEU produced under SWU contracts are only of the "class or kind
of merchandise" covered by the order if Commerce does not modify

---

[3]Commerce's Remand Redetermination offered minimal
justification for declining to modify the scope of its
antidumping order.  In its entirety, Commerce wrote:

> We agree with USEC that the scope of the order should not
> be revised in order to address the Eurodif I and Eurodif
> II decisions by the Federal Circuit.  The term subject
> merchandise is defined as a class or kind of merchandise
> that is within the scope of an investigation, a review,
> a suspension agreement, and order or a finding.  See
> Section 771(25) of the Tariff Act of 1930, as amended.
> LEU imported into the United States for consumption that
> meets the description of the merchandise established in
> the AD order on LEU continues to be subject merchandise.
> However, pursuant to the Eurodif I and Eurodif II
> decisions, Commerce will not assess AD duties on imports
> of LEU sold under SWU transactions.  Whether a sale is
> excludable on the ground that it constitutes a SWU sale
> is a question that must be determined in the context of
> an administrative review by the administering authority
> analyzing the terms and conditions of the contract, and
> the parties' performance of such contracts.   If the
> contract in question is determination to be a SWU
> transaction, consistent with Eurodif I and Eurodif II,
> Commerce will not include the SWU price in its dumping
> margin calculation.  Based upon the above, Commerce has
> not revised the scope of the AD order on LEU.

Remand Redetermination at 4-5.

the order's definition of the "class of kind of merchandise" to exclude such merchandise in compliance with Eurodif I and II. Put differently, if the Federal Circuit's decisions direct Commerce to modify the order to exclude LEU covered by SWU contracts, then such imports would not be of the "class or kind of merchandise . . . within the scope of . . . an order." Because the holdings of Eurodif I and II obligate Commerce to "eliminate[] all SWU transactions" from its antidumping duty order, Eurodif III, 414 F. Supp. 2d at 1263, 30 CIT at ___, such merchandise may not be of the "class or kind of merchandise" covered by the antidumping duty order. Therefore, pursuant to these opinions, the scope of the order must be redrawn to exclude LEU covered by SWU contracts from the ambit of the "class or kind of merchandise" covered by the order. See 19 U.S.C. § 1673e(a)(2) (the antidumping duty order is to include a description of the subject merchandise). When such a modification is made, LEU covered by SWU contracts will therefore no longer be within the "class or kind" of merchandise covered by the antidumping duty order.

Nor do the terms "class or kind of merchandise" require that differentiations between scope and non-scope merchandise be based only on physical characteristics. To the contrary, in determining whether a given product is within the "class or kind" of merchandise under order, Commerce must take into account "[t]he description of the merchandise contained in . . . the

determination[] of the Secretary . . . ," 19 C.F.R. § 351.225(k)(1); there is no basis for saying that the "description" must embody only the physical attributes of a product. This conclusion is rendered unavoidable when considered in relation to the other factors of which Commerce may take into account (besides a product's physical characteristics) when considering the scope or an antidumping duty order, namely: (1) the expectations of the ultimate purchaser; (2) the ultimate use of the product; (3) the channels of trade in which the product is sold; and (4) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2); see also Diversified Prods. Corp. v. United States, 6 CIT 155, 572 F. Supp. 883 (1983). Consequently, there is a strong basis for an antidumping duty order's differentiation between products based on "non-physical" attributes.

Relatedly, Commerce's assertion that whether a product falls within the scope of an order is something "that must be determined in the context of an administrative review by the administering authority analyzing the terms and conditions of the contract, and the parties' performance of such contracts," Remand Redetermination at 5, is unavailing. Commerce is correct in that it "is responsible for interpreting the antidumping duty order and determining whether certain products fall within the scope of the order as interpreted." Ericsson GE Mobile Commnc'ns, Inc. v. United States, 60 F.3d 778, 783 (Fed. Cir. 1995). But this does

not mean that the administrative review is the proper forum to address whether merchandise is within the scope of an order. Rather, when a question regarding the scope of an antidumping duty order arises as it pertains to a specific import, Commerce may, for example, "initiate an inquiry" as to whether a given product falls within the scope of an order, 19 C.F.R. § 351.225(b); additionally, "any interested party may apply [to Commerce] for a ruling as to whether a particular product is within the scope of an order or a suspended investigation." 19 C.F.R. § 351.225(c). During such a "scope determination," liquidation is suspended on the products at issue, 19 C.F.R. § 351.225(l)(2); following a scope determination, any interested party may seek judicial review of Commerce's determination under 19 U.S.C. § 1516a(2)(B)(vi). See Sandvik Steel Co. v. United States, 21 CIT 140, 143, 957 F. Supp. 276, 278 (1997) aff'd Sandvik Steel Co. v. United States, 164 F.3d 596 (Fed. Cir. 1997). As such, Commerce has a mandated procedure, apart from the administrative review, to make such fact intensive/product specific determinations. Accordingly, Commerce's own regulations belie its assertion that an administrative review is the proper forum to raise such objections. Indeed, nothing in the antidumping statute precludes correction of the order in accordance with the holdings of the Federal Circuit issued here. As noted above, Commerce here is required to "specifically explain how its final determination and order on remand has eliminated all SWU transactions as required

by <u>Eurodif I and II</u>."  <u>Eurodif III</u>,  414 F. Supp. 2d at 1263, 30 CIT at ___ (emphasis added).


## CONCLUSION

According to the discussion above, Commerce's Remand Redetermination not to re-open the record to further investigate the SWU transactions at issue here is sustained; Commerce's Remand Redetermination with respect to the scope of the order is remanded. On remand Commerce shall address Eurodif's objections in accordance with this opinion and the Court's order in <u>Eurodif III</u>.  Commerce shall have until June 19, 2006 to provide a remand determination. Parties shall submit comments on Commerce's remand determination no later than June 26, 2006 and rebuttal comments no later than July 7, 2006.


                                    <u>/s/ Donald C. Pogue</u>
                                     Donald C. Pogue
                                         Judge

                                    <u>/s/ Evan J. Wallach</u>
                                     Evan J. Wallach
                                         Judge

                                    <u>/s/ Richard K. Eaton</u>
                                     Richard K. Eaton
                                         Judge

Dated:     May 18, 2006
           New York, New York