**Revised: October 16, 2007**

# United States Court of Appeals for the Federal Circuit

2007-1005, -1006

EURODIF S.A.,
COMPAGNIE GENERALE DES MATIERES NUCLEAIRES,
and COGEMA, INC.,

Plaintiffs-Appellees,

and

AD HOC UTILITIES GROUP,

Plaintiff-Appellee,

v.

UNITED STATES

Defendant-Appellant,

and

USEC INC. and UNITED STATES ENRICHMENT CORPORATION,

Defendants-Appellants.

Stuart M. Rosen, Weil, Gotshal & Manges LLP, of New York, New York, argued for plaintiffs-appellees. Eurodif S.A., et al. With him on the brief were W. Andrew Ryu. Of counsel was Gregory Husisian.

Nancy A. Fischer, Pillsbury Winthrop Shaw Pittsman LLP, of Washington, DC, argued for plaintiff-appellee, AD Hoc Utilities Group. With her on the brief were Joshua D. Fitzhugh and Christine J. Sohar. Of counsel was Stephan E. Becker.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branchn, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant, United States. On the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Deputy Director, and Stephen C. Tosini, Attorney. Of counsel on the brief was Quentin M. Baird, Senior Attorney, Office of Chief Counsel for import Administration, United States Department of Commerce, of Washington, DC.

Sheldon E. Hochberg, Steptoe & John LLP, of Washington, DC, argued for defendant-appellants, Usec inc., et al. With him on the brief were Richard O. Cunningham, Eric C. Emerson, Alexandra E.P. Baj, and Evangeline Keenan.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach
Judge Richard K. Eaton
Judge Donald C. Pogue

# United States Court of Appeals for the Federal Circuit

2007-1005, -1006

EURODIF S.A.,
COMPAGNIE GENERALE DES MATIERES NUCLEAIRES,
and COGEMA,INC.,

Plaintiffs-Appellees,

and

AD HOC UTILITIES GROUP,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant,

and

USEC INC. and UNITED STATES ENRICHMENT CORPORATION,

Defendants-Appellants.

_____

DECIDED:  September 21, 2007
_____


Before MICHEL, <u>Chief Judge</u>, LOURIE, <u>Circuit Judge</u>, and ROBERTSON, <u>District Judge</u>.*

---

\* Honorable James Robertson, District Judge, United States District Court for the District of Columbia, sitting by designation.

ROBERTSON, <u>District Judge</u>.

In this dispute about the correct application of the antidumping statute, 19 U.S.C. § 1673, to enriched uranium feedstock, appellants United States, USEC Inc., and United States Enrichment Corp. (the latter two collectively referred to as "USEC") appeal from a judgment of the United States Court of International Trade. <u>Eurodif S.A. v. United States</u>, 442 F. Supp. 2d 1367 (Ct. Int'l Trade 2006). In 2005, we issued two interlocutory opinions in the same case, <u>Eurodif S.A. v. United States</u>, 411 F.3d 1355 (Fed. Cir. 2005) ("<u>Eurodif I</u>"), and <u>Eurodif S.A. v. United States</u>, 423 F.3d 1275 (Fed. Cir. 2005) ("<u>Eurodif II</u>"). Because the issues appellants raise in the instant appeal concern only the application of those decisions to future entries of low enriched uranium, we dismiss the appeal as unripe.

## I.   BACKGROUND

In <u>Eurodif I</u> and <u>Eurodif II</u>, we found that separate work unit ("SWU") contracts for the enrichment of uranium were contracts for services, rather than for the sale of goods, and that the low enriched uranium ("LEU") produced under those contracts was therefore not subject to the antidumping statute. <u>Eurodif I</u>, 411 F.3d at 1364; <u>Eurodif II</u>, 423 F.3d at 1278. Following those decisions, the Court of International Trade issued a remand order, instructing the Department of Commerce ("Commerce") to revise its final determination and order, and to "explain how its final determination and order on remand has eliminated all SWU transactions" in accordance with our decisions. <u>Eurodif S.A. v. United States</u>, 414 F. Supp. 2d 1263 (Ct. Int'l Trade 2006) ("<u>Eurodif III</u>"). Acting pursuant to that order, Commerce excluded LEU covered by SWU contracts from its recalculation of the duty margin, <u>Final Results of Redetermination Pursuant to Court</u>

Remand, Eurodif S.A. v. United States (Mar. 3, 2006), but it did not modify the scope of the antidumping duty order to exclude future imports of LEU covered by SWU contracts.

Plaintiffs-Appellees Eurodif S.A., Cogema, and Cogema, Inc. (collectively referred to herein as "Eurodif") supported Commerce's action, as far as it went, but they also asked the Court of International Trade to require Commerce to amend the scope order so that it would expressly exclude LEU covered by SWU contracts. Defendant-Appellant USEC supported Commerce's decision not to amend the scope order, but asserted that it was error for Commerce to exclude all LEU imported pursuant to SWU contracts from its recalculation without investigating the facts behind each contract to determine whether the transaction was a sale of services, as stated in the contract, or was in fact a sale of goods.

The Court of International Trade agreed with Eurodif. It found that our opinions in Eurodif I and Eurodif II took into account the factual circumstances operating behind the individual contracts in this case and therefore that Commerce was correct to exclude all LEU covered by those SWU contracts from its recalculation. Eurodif S.A. v. United States, 431 F. Supp. 2d 1351, 1354 (Ct. Int'l Trade 2006) ("Eurodif IV"). Furthermore, the Court of International Trade concluded that our previous opinions required Commerce to rewrite the scope of the antidumping duty order, and it remanded the case to Commerce once again with instructions to amend the order to exclude all LEU covered by SWU contracts from the "class or kind of merchandise" covered by the order. Id. at 1355 (citing 19 U.S.C. § 1673e(a)(2)). On this second remand, Commerce redefined the scope of the antidumping order to exclude any entry of LEU that is accompanied by a certification claiming that the entry is made pursuant to a SWU

contract. The Court of International Trade sustained, <u>Eurodif S.A. v. United States</u>, 442 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ("<u>Eurodif V</u>"), and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

In <u>Eurodif I</u> and <u>Eurodif II</u>, we found that the SWU contracts at issue "in this case" were contracts for the sale of services that were not subject to the antidumping statute. <u>See</u> <u>Eurodif I</u>, 411 F.3d at 1362, 1364. We did not address how Commerce should determine whether <u>future</u> entries of LEU are made pursuant to SWU contracts. The contentions of the government and USEC on this appeal are directed to future entries. They argue that Commerce should be permitted to suspend liquidation of future LEU imports until it determines -- transaction-by-transaction and by administrative review -- whether the SWU contract exception applies. USEC additionally argues that the scope amendment and certification should be modified now to make it clear that future LEU imports will not be outside the scope of the antidumping law if the unenriched uranium is either (a) obtained from an affiliate of the enricher or (b) delivered to the enricher after entry.

Neither the procedural question presented here (scope review vs. administrative review) nor the substantive questions relating to affiliation of the enricher are ripe for decision. The doctrine of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbott Labs. v. Gardner</u>, 387 U.S.

136, 148–49 (1967). It is drawn "both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction, but, even in a case raising only prudential concerns, the question of ripeness may be considered on a court's own motion." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) (citing Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993) (citations omitted)).

Administrative Review vs. Scope Determination

The Court of International Trade found that an administrative review is not the "proper forum to address whether merchandise is within the scope of an order," and that Commerce's own regulations authorize a different mechanism for this purpose: a "scope determination." Eurodif IV, 431 F. Supp. 2d at 1356. At the request of any interested party, Commerce may "initiate an inquiry" as to whether merchandise is within the scope of an antidumping duty order. Id. (citing 19 C.F.R. § 351.225(b)). If the Secretary determines that the product in question is included within the scope of the order, he may instruct Customs to suspend liquidation for each unliquidated entry, effective as of the date the scope inquiry was initiated. 19 C.F.R. § 351.225(l)(2). That determination is reviewable by the Court of International Trade. 28 U.S.C. § 1581(c).

Appellants argue that this scope determination process is inadequate, because, as a practical matter, an entry of LEU under review will be liquidated before Commerce can complete its determination. They assert that determining whether a particular transaction is entitled to the SWU-contract exception requires a careful analysis of the contract itself and an opportunity to investigate the manner of its execution. The administrative review process would permit Commerce to suspend liquidation while such an assessment takes place, but the scope determination process permits

Commerce to suspend liquidation only after the Secretary has issued a preliminary scope ruling. USEC notes that liquidation typically occurs ten months after entry, but Commerce's previous assessments of LEU contracts have taken seventeen to eighteen months.[1] As a result, appellants argue, the scope determination process will not be completed before the entry under review has been liquidated, mooting the review.

This dispute is about what may or may not happen with the next LEU case -- a case about which we have no facts. Our decisions in Eurodif I and Eurodif II did not resolve the procedural problem that USEC and the government have presented here, but we decline to attempt a resolution on this record. We have held that SWU contracts are contracts for services and that the LEU in this case entered under SWU contracts. Whether the next contested shipment of LEU is covered by a valid SWU contract is a question that must await the next case. If Commerce is correct, and the next disputed LEU entry is liquidated before Commerce can complete its scope review, the dispute will not be rendered non-justiciable, as it would be "capable of repetition, yet evading review." S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911).

LEU Obtained from or Sold to Affiliates

The more substantive questions USEC brings on this appeal also require a specific factual context for their resolution, and such a record is not before us. USEC wants it made clear that future LEU imports will not avoid antidumping penalties if the unenriched uranium was either (a) obtained from an affiliate of the enricher or (b) delivered to the enricher after the importation of the LEU. Although USEC does not

---

[1] Eurodif responds that Commerce's regulations provide for the issuance of final scope rulings within 120 days, but the regulation clearly states only that a decision "normally" will be reached within that time. 19 C.F.R. § 351.225(f)(5).

challenge our finding that the contracts in this case were contracts for the sale of services,[2] it seeks clarification as to whether our holding would apply to future entries with these characteristics.  Until we have record evidence regarding such entries, however, USEC's questions are non-justiciable.  Elec. Bond & Share Co. v. S.E.C., 303 U.S. 419, 443 (1938) ("We are invited to enter into a speculative inquiry for the purpose of condemning statutory provisions the effect of which in concrete situations, not yet developed, cannot now be definitely perceived. We must decline that invitation.").

III.    CONCLUSION

For the aforementioned reasons, we dismiss.

DISMISSED.

---

[2]    USEC initially requested that we order Commerce to reopen the record of the SWU contracts analyzed in Eurodif I and Eurodif II to examine purchases of unenriched uranium from affiliates, but now acknowledges that it raised this question in its appeal of Commerce's final redetermination of the antidumping duty, and that we rejected that appeal.  Eurodif S.A. v. United States, 217 Fed. Appx. 963 (Fed. Cir. 2007).