**SANDVIK STEEL COMPANY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 97–13.**
**Court No. 95–12–01782.**

United States Court of International Trade.

Feb. 3, 1997.

Torrington should have raised the issue at the

Akin, Gump, Strauss, Hauer & Feld, Washington, DC (Warren E. Connelly, Lori A. Manca), counsel, for plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; James A. Curley, Civil Division, Dept. of Justice, Commercial Litigation Branch; Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs Service, New York City, Joan L. MacKenzie, Office of Chief Counsel for Import Administration, Dept. of Commerce, Washington, DC, of counsel, for defendant.

administrative level.

## OPINION

POGUE, Judge:

This case is before the court on motions for summary judgment. The principal issue is whether the court has jurisdiction to hear plaintiff's claim that the United States Customs Service ("Customs") wrongfully assessed antidumping duties on certain imported merchandise allegedly outside the scope of an antidumping duty order.

### BACKGROUND

Plaintiff made six entries of steel tubing from Sweden between December 19, 1989 and November 20, 1990. Customs suspended their liquidation upon importation. On October 2, 1992, Customs liquidated a *different* entry of plaintiff's composite tubes and collected both antidumping and regular customs duties. Between July 1, 1993 and September 17, 1993 Customs liquidated the six suspended entries and collected regular customs duties of 8.0 percent *ad valorem* and antidumping duty deposits of 20.47 percent *ad valorem,* plus accrued interest. These seven entries, (the six plus the Oct. 2, 1992 entry), were apparently the only entries for which Customs collected antidumping duties on plaintiff's importation of composite tubes.[1] Plaintiff believed that its merchandise was beyond the scope of the antidumping duty order, and filed protests with Customs challenging the assessments. The protests were denied on July 7, 1995.

The antidumping duty order covered:

[S]tainless steel hollow products including pipes, tubes, hollow bars and blanks therefor, of circular cross section, containing over 11.5 percent chromium by weight, as provided for under the Harmonized System (HS) of Customs nomenclature item numbers 7304.41.00.00 and 7304.49.00.00. 52 Fed.Reg. 45,985 (Dep't Comm. Dec. 3, 1987) (antidumping duty order). Plaintiff's merchandise consists of seamless composite tubes. A composite tube is a carbon steel "inner" tube that has an outer covering or coating made of stainless steel. The carbon steel "inner" portion of the tube constitutes 75 percent of the weight of the entire tube. The stainless steel "outer" portion constitutes the other 25 percent of the tube's weight. Chromium constitutes 18 to 19 percent of the weight of the stainless steel portion of a composite tube. Thus the stainless steel portion of a composite tube accounts for only 25 percent of the weight of the entire tube, and the entire tube contains less than 5 percent chromium by weight. For the six entries that are the subject of this action, both Customs and plaintiff classified the product as a cold-drawn, seamless, non-alloy steel tube under HTSUS item number 7304.31.60.50. Plaintiff claims that the merchandise is beyond the scope of the antidumping duty order because the merchandise contains less than 5 percent chromium by weight of the entire tube and the merchandise is not classified under either 7304.41.00.00 or 7304.49.00.00, HTSUS, which are the two headings directly identified in the order.

### DISCUSSION

The gravamen of plaintiff's complaint is that the antidumping duty order[2] does not cover plaintiff's composite tubes. Plaintiff seeks to invoke the court's jurisdiction under 28 U.S.C. § 1581(a)[3] or alternatively under 28 U.S.C. § 1581(i)[4] to have the Court re-

---

**1.** Commerce revoked the antidumping duty order covering stainless steel tubing from Sweden on August 16, 1995, effective for entries made on or after December 1, 1990.

**2.** *See* Stainless Steel Hollow Products from Sweden, 52 Fed.Reg. 45,985 (Dep't Commerce 1987)(antidumping duty order).

**3.** "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a)(1994).

**4.** 28 U.S.C. § 1581(i) provides:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

278

view the scope of the antidumping duty order *de novo* and determine whether its merchandise falls within the order's scope. Defendant contends that plaintiff should have sought a scope determination from the United States Department of Commerce ("Commerce"), *see* 19 C.F.R. 353.29, which then could have been reviewed in this court under 28 U.S.C. § 1581(c).[5]

The question before the court is the proper jurisdictional basis for plaintiff's suit and which of three jurisdictional provisions, 28 U.S.C. § 1581(a), (c), or (i), if any, covers plaintiff's case. The difficulty posed by the present case is that Customs *ab initio* did not assess antidumping duties on plaintiff's composite tubes. Plaintiff challenges Customs' change of course, made without any apparent direction from Commerce, and the inclusion of its merchandise within the scope of the antidumping duty order.

The Court of International Trade reviews scope determinations under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi); *see, e.g., Springwater Cookie & Confections Inc., v. United States,* slip op. 96–160, 1996 WL 554536 (September 25, 1996)(reviewing scope determination by Commerce). Through a scope determination, Commerce interprets an antidumping duty order and determines whether certain products fall within its scope. *See* 19 C.F.R. § 353.29; *Ericsson GE Mobile Communications, Inc. v. United States,* 60 F.3d 778, 783 (Fed.Cir. 1995)("the Commerce Department is responsible for interpreting the antidumping duty

order and determining whether certain products fall within the scope of the order as interpreted."). A scope determination can be initiated by Commerce (the International Trade Administration), 19 C.F.R. § 353.29(a), or by the application of an interested party, 19 C.F.R. § 353.29(b). The application contains detailed information which Commerce considers in determining whether a scope inquiry is warranted. *Id.* If no inquiry is warranted, Commerce "issues a final ruling as to whether the merchandise which is the subject of the application is included in the existing order." *Id.* If a scope inquiry is warranted, Commerce requests comments from all interested parties, and subsequently issues its determination. *Id.* Liquidation is suspended pending "a preliminary or final scope ruling." 19 C.F.R. § 353.29(j)(1).

The Court of International Trade reviews Commerce's scope determinations to judge whether they are in accordance with law and supported by substantial evidence. *See* 19 U.S.C. § 1516a(b)(1)(B)(1994).

■ Upon assessment of the antidumping duties in issue, plaintiff did not request a scope determination from Commerce. Instead, plaintiff protested Customs' assessment of antidumping duties, and commenced this action when Customs denied its protests, asserting jurisdiction under 28 U.S.C. § 1581(a) or (i).

The Court of International Trade has section 1581(a) jurisdiction over denials by Customs of protests filed under 19 U.S.C. § 1515.[6] The subject matter of section 1515

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States–Canada Free–Trade Agreement and section 516A(g) of the Tariff Act of 1930. 28 U.S.C. § 1581(i)(1994).

5. "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930." 28 U.S.C. § 1581(c).

6. 19 U.S.C. § 1515 provides in pertinent part:
(a) Administrative review within two years
... the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid. Upon the request of the protesting party, filed within the time allowed for the filing of a protest under section 1514 of this title, a protest may be subject to further review

protests is prescribed by 19 U.S.C. § 1514(a), which lists seven categories of protestable Customs decisions.[7] At the same time, section 1514(b) of the statute states:

> With respect to determinations made under section 1303 of this title or subtitle IV [containing the antidumping laws] of this chapter which are reviewable under section 1516a of this title, *determinations of the appropriate customs officer are final and conclusive upon all persons* (including the United States and any officer thereof) *unless a civil action contesting a determination listed in 1516a of this title is commenced in the United States Court of International Trade ...*

19 U.S.C. § 1514(b)(1994). Section 1516a, referenced in section 1514(b), enumerates several types of determinations that are reviewable in the Court of International Trade under 28 U.S.C. § 1581(c), one of which is "[a] determination by the administering authority [Commerce] as to whether a particular type of merchandise is within the class or kind of merchandise described in an ... antidumping ... duty order." 19 U.S.C. § 1516a(a)(2)(b)(vi). This provision mirrors the substantive issue raised by plaintiff's

complaint. When this provision is read in conjunction with section 1514(b), it is apparent that unless there is a request for a scope determination from Commerce, Customs' decision concerning the scope of an antidumping duty order is "final and conclusive." 19 U.S.C. § 1514(b); *see also Fujitsu Ten Corp. of Am. v. United States*, 957 F.Supp. 245, 248–249 (1997)(explaining the operation of 19 U.S.C. §§ 1514(b), 1516a(a)(2)(B)(iv), and 1514(a)).

A suit challenging Customs' inclusion of merchandise within the scope of an antidumping duty order does not fall within the purview of section 1514(a). *See Fujitsu Ten*, at 7, at ——. Therefore, it cannot be challenged under the protest procedure. Rather, by operation of section 1514(b), that scope challenge must be made before Commerce, and subsequently, an action commenced in the Court of International Trade under 28 U.S.C. § 1581(c). *Id.* Failure to follow that procedure renders a Customs decision concerning the scope of an antidumping order "final and conclusive." *Id.* Section 1581(c) affords the exclusive judicial remedy to contest such a decision, after the administrative procedure of a scope determination has been exhausted. *Id.*

---

by another appropriate customs officer, under the circumstances and in the form and manner that may be prescribed by the Secretary in regulations, but subject to the two-year limitation prescribed in the first sentence of this subsection. Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest under section 1514 of this title.

7. 19 U.S.C. § 1514(a) provides:

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under section 1520(c) of this title;

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

Plaintiff had an opportunity to request a scope ruling from Commerce when it learned that antidumping duties were being assessed on its entries. Liquidation was suspended for the entries covered by the protests forming the basis of plaintiff's claim. During that period plaintiff should have requested a scope determination from Commerce, a remedy available to plaintiff as an interested party. *See* 19 C.F.R §§ 353.29(b); 353.2(k)(1). In addition, another entry of plaintiff was liquidated with antidumping duties on October 2, 1992, fully 10 months before the other entries were liquidated. Again, plaintiff had an opportunity to request a scope determination. Any request would have suspended liquidation pending a preliminary or final scope ruling from Commerce. *See* 19 C.F.R. § 353.29(j)(1). In the event plaintiff sought judicial review of Commerce's determination, the scope of the court's review would then have been consistent with the statute.[8] *See* 19 U.S.C. § 1516a(b)(1)(B)(1994).

Although Customs' change of course in this case amounted to a unilateral "dumping" decision seemingly inconsistent with a legal framework that vests authority for scope determinations in Commerce, *see* 19 C.F.R. § 353.29, *see also Mitsubishi Elec. Am., Inc. v. United States,* 44 F.3d 973, 976–977 (Fed.Cir.1994)("Customs merely follows Commerce's instructions in assessing and collecting [antidumping] duties."), plaintiff's request for a scope determination would have suspended liquidation of its merchandise and also would have mooted any adverse consequence of an erroneous interpretation of the

antidumping duty order by Customs. Thus, a request for a scope determination under 19 C.F.R. § 353.29 afforded plaintiff an available administrative remedy that would have provided complete relief.[9]

█ The Court's residual jurisdiction provision, 28 U.S.C. § 1581(i), "provides a jurisdictional basis for challenges not covered by other subsections of section 1581." *Mitsubishi,* 44 F.3d at 977. The statute of limitations requires that section 1581(i) actions be brought within two years after accrual of the cause of action, 28 U.S.C. § 2636(i) (1994), and a claim accrues when "the aggrieved party reasonably should have known about the existence of the claim." *St. Paul Fire & Marine Ins. Co. v. United States,* 959 F.2d 960, 964 (Fed.Cir.1992). Moreover, an unnecessary section 1514 administrative protest does not toll the statute of limitations for a suit commenced under section 1581(i). *See Mitsubishi,* 44 F.3d at 978. Finally, "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States,* 5 Fed. Cir. (T) 122, 124, 824 F.2d 961, 963 (1987).

Consequently, in this case, jurisdiction under section 1581(i) will not lie for two reasons: There was an adequate remedy available to the plaintiff under 1581(c); and, the suit was time barred. The last entry in issue was liquidated on September 17, 1993. Plaintiff's claim for that entry accrued on that date. This action was commenced on

---

8. As in *Fujitsu Ten,* "the confusion of this case could have been avoided had Customs rejected the protests promptly as beyond its jurisdiction," *Fujitsu Ten* at 249 n. 3, and directed plaintiff to Commerce for a scope determination.

9. Plaintiff's reliance on this court's decision in *American Hi–Fi Int'l, Inc. v. United States,* slip op. 95–182, 1995 WL 684074 (Nov. 16, 1995) ["*American Hi–Fi I*"] is misplaced. In *American Hi–Fi I,* the court confronted an issue of the operative decision maker for purposes of section 1514(a). Plaintiff had challenged what it believed was a Customs' decision to collect interest on dumping duties. Although technically a dumping decision, the court held that jurisdiction under section 1581(c) was unavailable to the

plaintiff because there was no timely, public Commerce determination on the subject in issue. Moreover, in *American Hi–Fi Int'l, Inc. v. U.S.,* 936 F.Supp. 1032 (1996) ["*American Hi–Fi II*"] the Court modified its decision in *American Hi–Fi I.* The court again found plaintiff's remedy under 28 U.S.C. § 1581(c) manifestly inadequate. Accordingly, in *American Hi–Fi II* the court found jurisdiction under 28 U.S.C. § 1581(i) and concluded that plaintiff's (i) claim did not accrue until plaintiff had actual notice of Commerce's decision. 936 F.Supp. at 1037–38. In this case, Sandvik had an available administrative procedure that was reviewable under section 1581(c), and that procedure was available to Sandvik the moment it learned that antidumping duties were to be assessed on its entries.

January 3, 1996, when the complaint was filed with the Court, *see* USCIT Rule 3(a)(3), more than two years after accrual of the claim. Hence, plaintiff's suit under 1581(i), if proper, was not timely commenced.

### CONCLUSION

As the court does not have jurisdiction under either 28 U.S.C. § 1581(a) or (i), the action must accordingly be dismissed.

### JUDGMENT