**XEROX CORPORATION,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 01–1124.**

United States Court of Appeals,
Federal Circuit.

May 6, 2002.

John M. Peterson, Neville, Peterson & Williams, of New York, NY, argued for plaintiff-appellant. With him in the brief were George W. Thompson and Curtis W. Knauss.

James A. Curley, Attorney, International Trade Field Office, Department of Justice, of New York, NY, argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC; and Joseph I. Liebman, Former Attorney in Charge, International Trade Field Office.

Before MAYER, Chief Judge, RADER and GAJARSA, Circuit Judges.

MAYER, Chief Judge.

Xerox Corporation appeals the judgment of the Court of International Trade dismissing its appeal from a formal protest with the U.S. Customs Service for lack of subject matter jurisdiction. *Xerox Corp. v. United States*, 118 F.Supp.2d 1353 (Ct. Int'l Trade 2000). Because ministerial errors by the Customs Service in its administration of antidumping duty orders may be proper subjects of Customs protests and jurisdiction was proper, we reverse and remand.

## Background

In 1994 and 1995, Xerox Corporation ("Xerox") imported shipments of rubber and plastic feed belts from Japan to be used for carrying paper across the light-platen or scanner-platen of photocopiers. Both entry summaries for the belts included a reference to the *Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed.Reg. 25,314 (June 14, 1989). The order covered "industrial belts used for power transmission ... in part or wholly of rubber or plastic, and containing textile fiber (including glass fiber) or steel wire, cord or strand." *Id.* Both entries were liquidated in June of 1996.

Pursuant to the antidumping duty order, the Customs Service ("Customs") levied a 93.16 percent ad valorem duty on the belts. Xerox challenged the imposition of the duty by filing a timely formal protest with Customs under 19 U.S.C. § 1514(a)(2). Customs denied the protest, and Xerox appealed to the Court of International Trade under 28 U.S.C. § 1581(a). Xerox argued to the court that its belts are not encompassed by the antidumping duty order because they are neither used for power transmission, nor are they reinforced. And because the belts are clearly outside the scope of the order, Customs made a ministerial error in administering the order and Xerox is due a refund of the duty deposit.

The court stated that the proper remedy for such an error is not a Customs protest, but a scope determination by the Department of Commerce ("Commerce") under 19 U.S.C. § 1516a(a)(2)(B)(vi) as to whether the subject merchandise is described in the order. Such a scope determination would then be appealable to the court under 28 U.S.C. § 1581(c). The court dismissed for lack of subject matter jurisdiction. Xerox filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## Discussion

Jurisdiction is an issue of law. *Nichimen Am., Inc. v. United States,* 938

F.2d 1286, 1288 (Fed.Cir.1991). We review decisions of the Court of International Trade dismissing for lack of subject matter jurisdiction *de novo*. *Friedman v. Daley*, 156 F.3d 1358, 1360 (Fed.Cir.1998); *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1345 (Fed.Cir.1995). This case calls upon us to distinguish between those issues which arise in the administration of antidumping duty orders which require a scope inquiry by Commerce, and those which are protestable to Customs.

The Tariff Act of 1930 instructs Commerce to determine whether foreign merchandise is being sold or is likely to be sold in the United States at less than its fair value. 19 U.S.C. § 1673 (1994). Concurrently, the International Trade Commission conducts an injury inquiry. If the International Trade Commission concludes that domestic industries are being materially injured or threatened with material injury by the foreign merchandise, Commerce proceeds to determine the class or kind of merchandise at issue and the margin at which it is being "dumped" or sold at less than fair value. *Id.* Commerce issues an antidumping duty order specifically describing the subject merchandise and designating its applicable rate of duty. *Id.* § 1673e(a)(2), (3). If a question arises as to whether merchandise is encompassed by an order, an interested party may request a scope inquiry by Commerce under 19 U.S.C. § 1516a(a)(2)(B)(vi), to determine if "a particular type of merchandise is within the class or kind of merchandise described in an existing . . . antidumping . . . duty order." The determination is appealable to the Court of International Trade under its exclusive jurisdiction set forth in 28 U.S.C. § 1581(c) for actions "commenced under section 516A of the Tariff Act of 1930."

Customs is charged with the ministerial function of fixing "the amount of duty to be paid" on subject merchandise. 19 U.S.C. § 1500(c) (1994). When merchandise may be subject to an antidumping duty order, Customs makes factual findings to ascertain what the merchandise is, and whether it is described in an order. *See Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir.1993) (stating that Customs makes similar factual determinations to classify merchandise under tariff headings). If applicable, Customs then assesses the appropriate antidumping duty. 19 U.S.C. § 1673e(a)(1) (1994); 19 C.F.R. § 351.211(b)(1) (2001). Such findings of Customs as to "the classification and rate and amount of duties chargeable" are protestable to Customs under 19 U.S.C. § 1514(a)(2). Denial of protests are reviewable by the Court of International Trade. 28 U.S.C. § 1581(a) (1994) (Exclusive jurisdiction lies for actions "commenced to contest the denial of a protest . . . under section 515 of the Tariff Act of 1930.")

In this case, the court, relying on our decision in *Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed.Cir.1998) (consolidating appeals of *Sandvik Steel Co. v. United States*, 957 F.Supp. 276 (Ct. Int'l Trade 1997), and *Fujitsu Ten Corp. of Am. v. United States*, 957 F.Supp. 245 (Ct. Int'l Trade 1997)), stated that antidumping determinations generally may not be protested to Customs, and therefore this Customs error requires a scope inquiry by Commerce. In *Sandvik*, we affirmed the Court of International Trade's dismissal for lack of jurisdiction when importers Sandvik Steel Co. ("Sandvik") and Fujitsu Ten Corp. ("Fujitsu") failed to exhaust their administrative remedies. Sandvik imported composite steel tubes with an inner tube of carbon steel covered by stainless steel of which the inner portion constituted seventy-five percent of the weight of the tube. *Sandvik*, 957 F.Supp. at 277. The antidumping duty order cov-

ered "stainless steel hollow products ... including tubes ... containing over 11.5 percent chromium by weight." *Id.* Sandvik's complaint specifically alleged that the tubes were not encompassed by the order because its tubes contained less than five percent chromium by weight. *Id.* Fujitsu imported "front ends," electronic parts used with automobile radio tuners. *Sandvik,* 164 F.3d at 598. Fujitsu alleged that the front ends were not covered in an antidumping order on " '[t]uners of the type used in consumer electronic products.' " *Id.* (quoting Treasury Dep't Order A–588–014).

We held that the importers should have sought scope rulings from Commerce under 19 U.S.C. § 1516a(a)(2)(B)(vi) because in both cases it was unclear whether the goods at issue were within the scope of antidumping duty orders. *Sandvik,* 164 F.3d at 598–99. We reasoned that Commerce "should in the first instance decide whether an antidumping order covers particular products," because "the order's meaning and scope are issues particularly within the expertise of that agency." *Id.* at 600. Moreover, the statute excludes antidumping determinations, that is, the calculation of duties, and the scope of orders, from matters that can be protested to Customs. *Id.* at 602. And to protect Commerce's administrative authority, neither Customs nor the court should make such determinations. *Id.* at 600.

In this case, however, the scope of the order is not in question, and therefore the reasoning in *Sandvik* does not apply. Xerox asserts that the belts at issue are facially outside the scope of the antidumping duty order and that it did not request a section 1516a(a)(2)(B)(vi) scope determination by Commerce because such an inquiry was unnecessary. We agree. The belts at issue were not used for power transmission and were not constructed with the materials listed in the order, and are clearly outside the order.

Xerox persuasively argues that correcting such a ministerial, factual error of Customs is not the province of Commerce. Instead an importer may file a protest with Customs. In cases such as this, where the scope of the antidumping duty order is unambiguous and undisputed, and the goods clearly do not fall within the scope of the order, misapplication of the order by Customs is properly the subject of a protest under 19 U.S.C. § 1514(a)(2). The Court of International Trade may review the denial of such protests under 28 U.S.C. § 1581(a). And pursuant to 19 U.S.C. § 1515(a), "any duties ... found to have been assessed or collected in excess shall be remitted or refunded." This appeal from Customs' denial is reviewable by the court.

### Conclusion

Accordingly, the judgment of the Court of International Trade is reversed and the case is remanded for proceedings in accordance with this opinion.

*REVERSED AND REMANDED.*