# United States Court of Appeals for the Federal Circuit

---

**THYSSENKRUPP STEEL NORTH AMERICA, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2017-1407

---

Appeal from the United States Court of International Trade in No. 1:15-cv-00072-RWG, Senior Judge Richard W. Goldberg.

---

Decided: March 30, 2018

---

ROBERT L. LAFRANKIE, Crowell & Moring, LLP, Washington, DC, argued for plaintiff-appellant. Also represented by ALEXANDER SCHAEFER.

JUSTIN REINHART MILLER, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by CHAD A. READLER, JEANNE E. DAVIDSON, CLAUDIA BURKE, AMY RUBIN; BETH BROTMAN, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border

Protection, United States Department of Homeland Security, New York, NY.

_____

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

ThyssenKrupp Steel North America, Inc., sued the United States in the Court of International Trade to challenge the imposition of an antidumping duty on several of its imports. The imports entered the United States after the date as of which, the government later determined, antidumping duties were no longer warranted. The prescribed direct review routes for administrative and judicial challenges to such impositions remained open at the time of that determination, and ThyssenKrupp timely filed administrative challenges. After those challenges were denied, ThyssenKrupp invoked the Court of International Trade's jurisdiction to obtain relief, stating two claims, one under 28 U.S.C. § 1581(a) and one under § 1581(i). The court dismissed the § 1581(a) claim for lack of jurisdiction and granted judgment on the pleadings in favor of the government on the § 1581(i) claim, thus leaving the entries at issue subject to the antidumping duty, even though the entries were made when duties were no longer legally warranted.

We reverse the dismissal of the § 1581(a) claim. We conclude that § 1581(a) is available for the relief ThyssenKrupp seeks. ThyssenKrupp invokes § 1581(i) only as an alternative, conditioned on the court holding § 1581(a) unavailable. Because we hold that § 1581(a) is available, we vacate the Court of International Trade's ruling on the § 1581(i) claim. The case is remanded.

I

A

An antidumping duty is imposed on imports in certain defined circumstances, including if (1) the U.S. Department of Commerce determines that the foreign merchandise is, or is likely to be, sold in the United States at less than its fair value, and (2) the International Trade Commission (ITC) determines that a domestic industry is, or is threatened with, material injury by reason of the imports. 19 U.S.C. § 1673. If, for particular merchandise, Commerce and the ITC make those affirmative determinations, Commerce publishes an antidumping duty order that directs the U.S. Customs and Border Protection (Customs) to assess an antidumping duty on imports of such merchandise. 19 U.S.C. § 1673e(a). Subsequently, annual "administrative reviews," if requested, are conducted to consider application of the order to entries made during discrete periods of time. 19 U.S.C. § 1675(a); *see* 19 C.F.R. § 351.213. Every five years, what is called here a "sunset review" is conducted to consider revocation of the order, based on whether revocation would likely lead to further dumping and material injury. 19 U.S.C. § 1675(c), (d)(2); *see* 19 C.F.R. § 351.218.

The actual collection of an antidumping duty by Customs occurs in stages under various statutes and implementing regulations. An importer becomes liable for any antidumping duty as soon as the foreign merchandise arrives in the United States. *See* 19 C.F.R. § 141.1(a). But liability is not conclusively assessed at that time. Within 15 days of arrival in the United States, foreign merchandise is "entered," meaning that documentation of the importation is filed with Customs. *See* 19 U.S.C. § 1484(a); 19 C.F.R. §§ 141.0a(a), 141.4(a), 141.5, 141.11(b). Generally, the importer deposits the estimated duty at the time of entry and the merchandise is released into the country. *See* 19 U.S.C. §§ 1505(a), 1673e(a)(3),

1673g(a); 19 C.F.R. §§ 141.101, 141.103. Final determination of the amount of liability for antidumping duties typically occurs later. "[T]he United States uses a 'retrospective' assessment system" to determine the "final liability" for antidumping duties. 19 C.F.R. § 351.212(a). "Generally, the amount of the duties to be assessed is determined" in a § 1675(a) administrative review covering the period of time encompassing the entry. *Id.* "If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered." *Id.*

Once the antidumping duty is determined, Customs will "liquidate" the entries. *See* 19 U.S.C. §§ 1500(d), 1505(b); 19 C.F.R. § 159.2. Although "liquidate" is not defined by statute, a regulation declares that liquidation is "the final computation or ascertainment of duties on entries." 19 C.F.R. § 159.1. An initial Customs "final computation or ascertainment," however, is not entirely "final": it is, for example, subject under defined circumstances to internal agency alteration through a "protest" mechanism, *see* 19 U.S.C. § 1514, and thereafter to judicial review, 28 U.S.C. § 1581. *See also* 19 U.S.C. § 1501 (addressing reliquidation); 19 C.F.R. § 159.6(b) (same). After liquidation, Customs generally refunds to the importer the difference between the entry deposit and a smaller liquidation amount or bills the importer for the difference between the entry deposit and a larger liquidation amount. 19 U.S.C. § 1505(b); 19 C.F.R. § 159.6(c).

B

ThyssenKrupp imports corrosion resistant carbon steel flat products (CORE) from Germany. In 1993, Commerce issued an order that imposed an antidumping duty on such imports. *Certain Hot-Rolled Carbon Steel Flat Products, Certain Cold-Rolled Carbon Steel Flat*

*Products, Certain Corrosion-Resistant Carbon Steel Flat Products and Certain Cut-to-Length Carbon Steel Plate from Germany*, 58 Fed. Reg. 44,170 (Dep't of Commerce Aug. 19, 1993). Until 2012, CORE from Germany was subject to that antidumping duty order. *See Corrosion-Resistant Carbon Steel Flat Products from Germany and Korea*, 77 Fed. Reg. 301, at 301 (Int'l Trade Comm'n Jan. 4, 2012).

Between February 14, 2012, and July 14, 2012, ThyssenKrupp made eight entries of CORE from Germany. Commerce solicited requests for an administrative review of the antidumping duty for CORE from Germany for the period August 1, 2011, through July 31, 2012, but no interested party submitted such a request. For that reason, on October 17, 2012, Commerce issued "automatic liquidation instructions" that directed Customs to "[l]iquidate all [CORE] entries for all firms" for that time period, including all eight of ThyssenKrupp's entries, under Message No. 2291302. J.A. 318; *see* 19 C.F.R. § 351.212(c)(1)(i) (Commerce will instruct Customs to assess antidumping duties if no timely request for administrative review is received). Customs subsequently announced its liquidation calculation as to six of ThyssenKrupp's eight entries on November 16, 2012, and as to the remaining two entries on December 21, 2012. Customs assessed the antidumping duties at the prevailing rate: 10.02%.

Meanwhile, on January 3, 2012, the ITC instituted its required sunset review of the original 1993 antidumping duty order. *See Corrosion-Resistant Carbon Steel Flat Products from Germany and Korea*, 78 Fed. Reg. 15,376, at 15,376 (Int'l Trade Comm'n Mar. 11, 2013); *Corrosion-Resistant Carbon Steel Flat Products from Germany and Korea*, 77 Fed. Reg. at 301. More than a year later, on March 11, 2013, the ITC concluded, and informed Commerce, that revocation of the antidumping duty order would not likely lead to material injury to a domestic

industry. *Corrosion-Resistant Carbon Steel Flat Products from Germany and Korea*, 78 Fed. Reg. at 15,376. Eight days later, on March 19, 2013, acting under 19 U.S.C. § 1675(d)(2), Commerce published notice of the revocation of the antidumping duty order for CORE from Germany. *Corrosion-Resistant Carbon Steel Flat Products from Germany and the Republic of Korea*, 78 Fed. Reg. 16,832 (Dep't Commerce Mar. 19, 2013).

In that notice, Commerce stated that, "[p]ursuant to [19 U.S.C. § 1675(d)(2)] and 19 CFR § 351.222(i)(2)(i), the effective date of revocation is February 14, 2012." *Id.* at 16,833. That date was "the fifth anniversary of the effective date of publication in the Federal Register of the previous continuation of" the antidumping order in the earlier sunset review. *Id.* (emphasis omitted). All of the ThyssenKrupp entries at issue here were made after February 14, 2012.

In the same notice, Commerce added that it would (1) instruct Customs "to terminate the suspension of liquidation and to discontinue the collection of cash deposits on entries of the subject merchandise, entered or withdrawn from warehouse, on or after February 14, 2012," (2) "instruct [Customs] to refund with interest all cash deposits on entries made on or after February 14, 2012," and (3) "complete any pending or requested administrative reviews of these orders covering entries prior to February 14, 2012," which "will continue to be subject to suspension of liquidation and antidumping and/or countervailing duty deposit requirements and assessments." *Id.*

On April 4, 2013, Commerce issued such instructions to Customs. Those instructions provided, in pertinent part:

1. As a result of a five-year ("sunset") review, Commerce has revoked the antidumping duty or-

der on [CORE] from Germany. . . . The effective date of the revocation is 02/14/2012.

2. [Customs] is directed to terminate the suspension of liquidation for all shipments of CORE from Germany which were entered, or withdrawn from warehouse, for consumption on or after 02/14/2012. All entries of CORE from Germany that were suspended on or after 02/14/2012 should be liquidated without regard to antidumping duties (i.e., release all bonds and refund all cash deposits with interest).

3. Liquidation instructions covering certain entries of CORE from Germany during the period 08/01/2011 through 07/31/2012 were issued under message number 2291302, dated 10/17/2012. However, as noted [*sic*] paragraph 1 above, this order has been revoked, effective 02/14/2012. Accordingly, *all unliquidated entries* of CORE from Germany entered, or withdrawn from warehouse, for consumption on or after 02/14/2012 should be liquidated without regard to antidumping duties.

J.A. 323 (internal citation omitted; emphasis added).

In the weeks following transmittal of the April 4 instructions, ThyssenKrupp filed administrative protests with Customs at the Ports of Mobile and Philadelphia regarding the November/December 2012 liquidations of its eight CORE entries. As Customs later noted, each of those protests was "timely filed," *i.e.*, filed within the 180-day period allowed for filing a protest of the liquidation involved. J.A. 202. The protests asserted that ThyssenKrupp's eight CORE entries were subject to the April 4 instructions, which, properly read, eliminated the antidumping duty on those entries—because they occurred after the February 14, 2012 effective date of the revocation of the antidumping duty order and were the subject of timely filed protests, rendering the Novem-

ber/December 2012 liquidation calculations not final. ThyssenKrupp sought refunds of the antidumping duties deposited for those entries.[1]

In June 2013, the Port of Philadelphia denied ThyssenKrupp's protest, stating that Commerce's revocation instructions "pertain[] to unliquidated entries." J.A. 145. A few weeks later, the Port of Mobile, in contrast, forwarded ThyssenKrupp's protests to Customs headquarters because that Port believed that ThyssenKrupp's "arguments regarding liquidation finality raise questions of interpretive application that require more than a 'ministerial reaction' to Commerce's instructions, and this protest." J.A. 359. Customs headquarters decided to review the protests from both Ports.

In December 2014, after more than a year, Customs denied ThyssenKrupp's protests. J.A. 199–205. Customs did not deny that it was required to apply the April 4, 2013 instructions, properly understood. Rather, the entire Customs opinion was a rejection of ThyssenKrupp's contention regarding the proper understanding of those instructions. Based on its analysis of various judicial decisions, Customs reasoned that those instructions were properly understood not to eliminate duties for the eight entries at issue—which Customs concluded were *not* "unliquidated entries" under those instructions. J.A. 201–04; *see* J.A. 203 ("the entries at issue were not 'unliquidated' as of the revocation of the antidumping duty order and the issue of the revocation instructions"). Having thus interpreted the April 4 instructions' "unliquidated entries" phrase as not covering the eight entries here at issue, Customs declared that, in fact, the phrase "is not

---

[1]  ThyssenKrupp also filed protests regarding six additional CORE entries at the Port of Detroit. Customs approved those protests and issued refunds. Those protests are not at issue here.

ambiguous." J.A. 204. And based on that declaration, Customs concluded that Customs had only a "ministerial" action to perform, which meant that its "refusal to reliquidate [ThyssenKrupp's] entries pursuant to the [April 4] revocation instructions is not protestable." J.A. 204. The Ports then issued follow-up decisions rejecting ThyssenKrupp's protests as non-protestable.

On March 19, 2016, ThyssenKrupp brought this suit against the United States in the Court of International Trade. Asserting jurisdiction under 28 U.S.C. § 1581(a), ThyssenKrupp contended that Customs erred in failing to interpret and apply the April 4 instructions to liquidate ThyssenKrupp's eight entries without the antidumping duty—and therefore failing to refund the duty deposited upon entry. Asserting jurisdiction under § 1581(i) in the alternative if § 1581(a) jurisdiction were held unavailable, ThyssenKrupp challenged Commerce's April 4 instructions as contrary to law as written and as enforced, again contending that its eight entries at issue, which occurred after February 14, 2012, were to be free from the antidumping duty found unwarranted as of that date.

The government moved to dismiss for lack of jurisdiction under § 1581(a) and for judgment on the pleadings under § 1581(i). The court granted the motion. *ThyssenKrupp Steel N. Am., Inc. v. United States*, 190 F. Supp. 3d 1205, 1212 (Ct. Int'l Trade 2016).

ThyssenKrupp timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

### A

We review the dismissal for lack of jurisdiction de novo. *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1354 (Fed. Cir. 2006). Under 28 U.S.C. § 1581(a), the Court of International Trade has exclusive jurisdiction "of any civil action commenced to contest the denial

of a protest, in whole or in part, under [19 U.S.C. § 1515]." The referred-to section 1515 addresses Customs determinations regarding protests filed with Customs under 19 U.S.C. § 1514 (titled "Protest against decisions of Customs Service").

Section 1514(a) identifies agency actions subject to protest through its statement that certain actions of Customs are "final and conclusive" unless protested or suit is filed on the denial of a protest:

> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of Title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, *decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to*—
>
> (1) the appraised value of merchandise;
>
> (2) the classification and rate and amount of duties chargeable;
>
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) *the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title*;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;

*shall be final and conclusive* upon all persons (including the United States and any officer thereof) *unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade* in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

19 U.S.C. § 1514(a) (emphases added; final sentence omitted). Section 1514(c) prescribes how to file "[a] protest of a decision made under subsection (a)." *Id.* § 1514(c). Implementing regulations state that "[t]he following decisions of [Customs], including the legality of all orders and findings entering into those decisions, may be protested under [19 U.S.C. § 1514]," 19 C.F.R. § 174.11, and include among the listed decisions "administrative decisions involving . . . [t]he liquidation or reliquidation of an entry, or any modification of an entry," *id.* § 174.11(b)(5).

A protest regarding a liquidation under § 1514(a) must be filed within 180 days of the date of liquidation. 19 U.S.C. § 1514(c)(3)(A); 19 C.F.R. § 174.12(e). A protester under 19 U.S.C. § 1514 has 180 days from specified dates to sue in the Court of International Trade to contest the denial of a protest in whole or in part. 28 U.S.C. §§ 2631(a), 2636(a).

The Court of International Trade concluded that 28 U.S.C. § 1581(a) does not provide for jurisdiction here because (1) ThyssenKrupp's spring 2013 protests were untimely under 19 U.S.C. § 1514(c), (2) the disposition of the protests by Customs in December 2014 were not "denial[s]" as required by 19 U.S.C. § 1514(a), and (3) the liquidation actions taken by Customs in November/December 2012 were purely ministerial and therefore not "decisions of the Customs Service" subject to protest under § 1514(a). *ThyssenKrupp Steel*, 190 F. Supp. 3d at 1209–11. We reverse on all grounds.

1

Section 1514(c)(3) requires that "[a] protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—(A) date of liquidation or reliquidation, or (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made." As further explained by regulation, "[p]rotests must be filed, in accordance with [§ 1514], . . . within 180 days of a decision relating to an entry made on or after December 18, 2004, after any of the following: (1) The date of notice of liquidation or reliquidation, or the date of liquidation or reliquidation . . . (2) The date of the decision, involving neither a liquidation nor reliquidation, as to which protest is made . . . ." 19 C.F.R. § 174.12(e); *see also id.* § 174.13(a)(4) (contents of protest should include "[t]he date of liquidation of the entry, or the date of a decision not involving a liquidation or reliquidation."). Because ThyssenKrupp requested relief relating to the 2012 liquidation determinations by Customs, ThyssenKrupp was required to file protests within 180 days of those determinations. ThyssenKrupp undisputedly did so. The protests therefore were timely, as the government appears to agree.

2

We also conclude that Customs's actions on ThyssenKrupp's protests constitute "denial[s]" under 19 U.S.C. § 1514(a).  Customs, using a form to respond to ThyssenKrupp's protests, "rejected" the protests "as non-protestable."[2]  But that label is of no statutory significance.  By statute, Customs "shall review the protest and shall allow or deny such protest in whole or in part." 19 U.S.C. § 1515(a).  Here, by rejecting the protests in their entirety, Customs denied the protests.  The government does not argue to the contrary.

3

The Court of International Trade construed ThyssenKrupp's protests as challenges limited to the execution by Customs, in November/December 2012, of the liquidation instructions issued by Commerce in October 2012.  *ThyssenKrupp Steel*, 190 F. Supp. 3d at 1210. The court concluded that the execution was ministerial, as Customs simply carried out Commerce's clear October 2012 liquidation instructions.  *Id.*  ThyssenKrupp's claim, however, does not focus on the execution of those instructions in November/December 2012, viewed alone, but rather on how the April 4, 2013 instructions apply to the entries at issue.

In assessing jurisdiction, we identify "the 'true nature' of the action."  *Norsk Hydro Can.*, 472 F.3d at 1355 (quoting *Williams v. Sec'y of the Navy*, 787 F.2d 552, 557 (Fed.

---

[2]   Customs provided its response to ThyssenKrupp's protest by form OMB No. 1651-0017, which lists several options for "Protest Explanation" by Customs: "Approved," "Rejected as non-protestable," "Denied in full for the reason checked," "Denied in part for the reason checked," "Untimely filed," "See attached protest review decision," and "Other."  J.A. 209.

Cir. 1986)). ThyssenKrupp timely filed protests of the 2012 liquidation determinations, but what the protests sought was for Customs to update those determinations to comply with the intervening April 4, 2013 instructions issued by Commerce. *See* J.A. 80 ("superseding liquidation instructions for the sunset review were issued on message #3094301 reflecting the intention for all entries entered or withdrawn on or after 2/14/2012 . . . to be liquidated without regard to antidumping duties"); J.A. 83 (same); J.A. 87 (same). ThyssenKrupp argued, in other words, that the law applicable to the eight entries at issue had changed since November/December 2012 and that Customs was obligated to apply the newly governing law to its entries.

When Customs ultimately responded in December 2014, it did not question that it was obligated to apply the new law, *i.e.*, to determine how the results of the sunset review applied to the entries at issue. Nor does the government in this court question that Customs had to conduct that inquiry. The longstanding principle, recognized in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 109 (1801), is that, as to events still subject to consideration on direct review, when the law applicable to those events changes, the changed law is to be applied in the direct review. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226–27 (1995); *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 716 (1974) (noting "the general rule that a court is to apply a law in effect at the time it renders its decision").[3]

---

[3]    *Plaut*, which reaffirmed the *Schooner Peggy* principle, relied on the standard concept of direct-review "finality"—which generally does not occur, for this purpose, until all the steps in the direct review process are completed or the time has passed for taking further steps in the process. *Plaut*, 514 U.S. at 214 (citing *Griffith v.*

Customs proceeded to interpret the April 4 instructions. It decided that those instructions as properly interpreted did not actually require any change in the November/December 2012 liquidations. And on that basis Customs left those liquidations in place.

The December 2014 decision, in stating the basis on which Customs would continue to give effect to the November/December 2012 liquidations, is fairly characterized as having "enter[ed] into" the liquidation determinations challenged in the protest. 19 U.S.C. § 1514(a) ("decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to . . . the liquidation or reliquidation of an entry, . . . or any modification thereof"). In any event, regardless of

_____

*Kentucky*, 479 U.S. 314, 321 n.6 (1987)); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1345–46 (Fed. Cir. 2013); *see also, e.g.*, *Clay v. United States*, 537 U.S. 522, 527 (2003) (discussing finality that triggers time for filing motions under 28 U.S.C. § 2255); *Agostini v. Felton*, 521 U.S. 203, 239 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6), the only remaining avenue for relief on this basis from judgments lacking any prospective component."). *See generally* Aaron-Andrew P. Bruhl, *When Is Finality . . . Final – Rehearing and Resurrection in the Supreme Court*, 12 J. App. Prac. & Process 1, 1–2 (2011) (noting that, although "finality is a word of many meanings," "the finality that attaches when the direct appellate process has run its course . . . marks the point at which a case outcome is no longer routinely subject to revision based on changes in governing law"; before that point, "an appellate court can reverse a trial court decision that was perfectly correct when rendered but that has become incorrect by the time of the appeal").

such a characterization, we think that the statute must be read as permitting a liquidation determination to be protested (in a timely fashion, as it was here) on the ground that its soundness, including its continued soundness, depends on resolution of an issue that requires a "decision" by Customs. That understanding serves the purpose of the protest mechanism—to allow agency consideration of issues after an initial liquidation determination—and respects the longstanding principle, noted above, that newly governing law, if retroactive to particular events, is to be applied to those events in ordinary, timely initiated direct-review proceedings. We see no basis for reading the statute to preclude a timely protest to bring the agency's final duty calculation into line with a change of applicable law if one has occurred.

The government does not dispute that, when Customs received the protests in April and May 2013, it was required to act in accordance with the April 4, 2013 instructions. Nor does the government dispute that 19 U.S.C. § 1514(a) applies, and the Court of International Trade has jurisdiction under 28 U.S.C. § 1581(a), *if* the task of applying the April 4 instructions presented a genuine "decision" for Customs to make. The government argues, however, that Customs did not really make a "decision[]," 19 U.S.C. § 1514(a), or have a "decision[]" to make, when Customs concluded that the April 4, 2013 instructions required no change in the November/December 2012 liquidation determinations. Only on that basis does the government argue that 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a) do not apply here.

In so arguing, the government invokes this court's holding in *Mitsubishi Electronics America, Inc. v. United States* that, in light of the legislative history regarding the determination and calculation of antidumping duties, which were specifically assigned to Commerce and meant to be carried out by Customs, a "ministerial" collection action by Customs is not a "decision" under § 1514(a). 44

F.3d 973, 976–77 (Fed. Cir. 1994). The "ministerial" standard, in its ordinary meaning, excludes actions requiring genuine interpretive or comparable judgments as to what is to be done. *See, e.g., Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 318 (1958); *Noble v. Union River Logging R. Co.*, 147 U.S. 165, 171 (1893); *U.S. ex rel. Dunlap v. Black*, 128 U.S. 40, 45–46 (1888); Black's Law Dictionary (10th ed. 2014) ("ministerial"). The court has thus recognized that a range of Customs rulings are within the statutory authorization to review "decisions," including those underlying liquidation determinations. *See, e.g., Koyo Corp. of U.S.A. v. United States*, 497 F.3d 1231, 1239 (Fed. Cir. 2007) (ruling that liquidation is subject to protest when Customs fails to execute liquidation instructions and instead, by delay, leaves the entry to automatic liquidation by operation of statute); *Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004) (ruling that Customs made a particular "decision" regarding how to effect liquidation); *Xerox Corp. v. United States*, 289 F.3d 792, 795 (Fed. Cir. 2002) (where Customs misapplied clear Commerce order, protest was properly filed under § 1581(a); "correcting such a ministerial, factual error of Customs is not the province of Commerce" but is instead properly the subject of a protest under 19 U.S.C. § 1514(a)(2).").

In the present matter, we conclude, Customs had a non-ministerial task to perform. It had to resolve a genuine dispute about the meaning of the term "unliquidated" in the April 4, 2013 instructions and whether, based on that term, those instructions required alteration of the November/December 2012 execution of the earlier Commerce instructions. Contrary to the government's contention, non-ministerial judgment was required. As both parties recognize in their presentations in this court, which properly focus on the meaning of the April 4 instructions, our analysis and conclusion necessarily address both the jurisdictional issue and the merits of

ThyssenKrupp's contention concerning the proper meaning of those instructions.

Commerce's April 4 instructions state that "all unliquidated entries of CORE from Germany entered, or withdrawn from warehouse, for consumption on or after 02/14/2012 should be liquidated without regard to antidumping duties." J.A. 323. But those instructions do not define the term "unliquidated entries." The government nevertheless contends that the April 4 instructions are unambiguous, plainly covering ThyssenKrupp's entries, and therefore required nothing but ministerial implementation by Customs. We reject that contention.

What Customs did when presented with the issue undermines that contention. Customs issued a six-page opinion letter interpreting the language of the April 4 instructions in light of the statutory framework, regulations, and relevant case law. Customs interpreted the term "unliquidated" to "not include entries that have been liquidated but whose liquidations are not yet final due to the filing of a protest," and it applied that interpretation to ThyssenKrupp's protest and accordingly left the November/December 2012 liquidation determinations in place. J.A. 202. Customs made a determination that embodied meaningful judgments about what was required, hardly a ministerial act.

In any event, the "unliquidated entries" language does not have the plain, unambiguous meaning that the government urges. To the contrary, the better view of that language is ThyssenKrupp's position.

The April 4 instructions directed that "all unliquidated entries of CORE from Germany entered, or withdrawn from warehouse, for consumption on or after 02/14/2012"—the revocation date for the antidumping duty order on such CORE from Germany—"should be liquidated without regard to antidumping duties." J.A. 323. As the government notes, the instructions track

the language of the statutory provision regarding sunset review revocation orders, 19 U.S.C. § 1675(d)(3) ("A determination under this section to revoke an [antidumping duty] order . . . shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by [Commerce]."). We therefore consider the question one of statutory interpretation within the scheme established by the statute and the implementing regulations authorized by the statute.

The better reading of the statute is that entries covered by liquidation determinations that are still subject to alteration through ordinary direct review mechanisms are "unliquidated entries" entitled to the benefit of the revocation order. The regulations provide a general definition of "[l]iquidation" as "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1. An agency action initially termed a "liquidation," however, may not in fact be a "final computation or assessment." By statute, an initial liquidation in which an underlying Customs decision is under protest is *not* "final and conclusive." 19 U.S.C. § 1514(a); *see also* 19 U.S.C. § 1504(a)(2)(B) (in subsection titled "unliquidated imports," providing for immediate liquidation by waiver of "[a]n entry . . . whose designated or identified import entries have not been liquidated and become final . . . ."); *id.* § 1503 (providing that the assessment of duties "shall be the appraised value determined upon liquidation, in accordance with section 1500 of this title or any adjustment thereof made pursuant to section 1501 of this title [reliquidation]. *Provided, however*, [t]hat if reliquidation is required pursuant to a final judgment or order of the [Court of International Trade] . . . , the basis for such assessment shall be the *final* appraised value determined by such court.") (second emphasis added). Entries that have been liquidated may also be reliquidated in certain circumstances under a different

duty computation, *see* 19 U.S.C. § 1501; even reliquidations may be reliquidated, *id.* Regulations apply the term "liquidated duties" to those assessed both "in original liquidation[s]" and "in reliquidation[s].*"* 19 C.F.R. § 159.6(a)–(b).

ThyssenKrupp's interpretation of "unliquidated" is also supported by the policy most naturally understood as embodied in the statutory and regulatory framework. The parties agree that the purpose of a sunset review is to provide prospective relief, and the scheme makes clear, as does the specific Commerce order here, that prospective relief is to start the date of the *initiation* of the investigation—here, February 14, 2012. Thus, the sunset review looks at information gathered before the initiation of the investigation. 19 U.S.C. § 1675(c)(2) (requiring that interested parties submit statements and other information relevant to the sunset review investigation 30 days *before* the investigation begins). And although the investigation may take a year or more, *id.* § 1675(c)(5), the statute allows Commerce to set the effective date of any resulting revocation order, *id.* § 1675(d)(3). Commerce has provided, by regulation, that the date is "the fifth anniversary of the date of publication in the Federal Register of the order or suspended investigation," 19 C.F.R. § 351.222(i)(2)(i)—*i.e.*, the date that the sunset review investigation is initiated, 19 U.S.C. § 1675(c)(1).[4]

---

[4]    We have previously noted that the annual administrative review procedure is, in the same sense, *retrospective* in encompassing the period of review. *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1563 (Fed. Cir. 1984) ("It is absurd to say that the [International Trade Administration] must investigate annually the subsidies in effect in India or anywhere else, yet to say it cannot act on its factual findings with respect to the very year to which they apply."); *see also* 19 C.F.R.

The government cites nothing in the statute or legislative history that supports its view that the revoked antidumping duties continue to apply to entries that occurred after the revocation date, just because there was an initial liquidation determination as to those entries, even when that determination is subject to a timely filed protest. Nor does the government's view make sense in terms of the basic policy: Commerce has determined that entries made on or after the revocation date do not warrant antidumping duties, yet the government's view would apply such duties to those entries. We do not question such a result where ordinary direct review mechanisms are no longer open. *Cf. supra* n.3. But such mechanisms were open here. In these circumstances, the government has not identified any reason to think that Congress intended entries like ThyssenKrupp's to be subjected to duties that have been determined to be no longer justified at the time the entries occurred, or that Congress intended to require that result by departing from the *Schooner Peggy* principle.

As the government concedes, to the extent that the April 4, 2013 instructions do not plainly exclude ThyssenKrupp's entries, Customs's interpretation and application of the term "unliquidated" are reviewable under 28 U.S.C. §1581(a). Oral Argument at 15:48–16:10; *accord* Def.'s Reply Mem. in Support of Its Mot. to Dismiss at 4, *ThyssenKrupp Steel N. Am., Inc. v. United States*, No. 15-72 (Ct. Int'l Trade July 27, 2016) ("We agree with ThyssenKrupp that . . . if [Customs] adopted a novel interpretation of the term 'unliquidated,' *i.e.*, one that went beyond the plain meaning of the terms, then ThyssenKrupp may be permitted to protest such actions

---

§ 351.213(a) (explaining that the administrative review procedure under § 1675 is a "'retrospective' assessment system" to determine duty liability).

and obtain judicial review under section 1581(a).”), Dkt. No. 45.  For the reasons we have set out, we reject the government's view of the April 4 instructions.  We therefore hold that the Court of International Trade had jurisdiction in this matter under 28 U.S.C. § 1581(a).

We remand the case for consideration of the merits of ThyssenKrupp's claim in accordance with our decision that the entries in question were "unliquidated" within the meaning of the April 4, 2013 instructions implementing the results of the sunset review.

B

ThyssenKrupp also appeals the grant of judgment on the pleadings in favor of the United States on ThyssenKrupp's second claim, which invoked 28 U.S.C. § 1581(i)(2) and (4) and contended that Commerce's April 4 instructions are contrary to law as written and enforced.  ThyssenKrupp pled this claim as an alternative only, conditioned on the court's finding lack of jurisdiction to adjudicate its first claim under § 1581(a).  Complaint at 10, *ThyssenKrupp Steel N. Am., Inc. v. United States*, No. 15-72 (Ct. Int'l Trade Mar. 19, 2015), Dkt. No. 5; *see also* Mem. of Law in Support of Pl.'s Mot. for Summ. J. at 24, *ThyssenKrupp Steel N. Am., Inc. v. United States*, No. 15-72 (Ct. Int'l Trade July 22, 2016) ("[S]hould the Court determine that it lacks jurisdiction to review [Customs]'s actions under section 1581(a), [ThyssenKrupp] asserts in the alternative that the Court has 'residual' jurisdiction under section 1581(i) to review the lawfulness of Commerce's actions in issuing the liquidation instructions."), Dkt. No. 44-1.  We have concluded that ThyssenKrupp has established jurisdiction over its first claim.  It follows that there is nothing to decide on the second claim.  Accordingly, we vacate the merits judgment on that claim.

## III

For the foregoing reasons, we reverse the judgment dismissing the claim under § 1581(a). We vacate the judgment on the pleadings as to the claim under § 1581(i). We remand for further proceedings consistent with this opinion.

Costs awarded to appellant.

**REVERSED IN PART, VACATED IN PART, AND REMANDED**